In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00223-CR


______________________________




ALFONSO SANCHEZ, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 05F0272-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 During a semi-annual "shakedown" of "every cell on the farm" (1) for contraband, a correctional
officer discovered a shank (2) in Alfonso Sanchez's cell. Sanchez was charged with, and a jury
convicted him of, possession of a deadly weapon in a penal institution, a third-degree felony. See
Tex. Penal Code Ann. § 46.10(a)(2), (d) (Vernon 2003). The jury assessed punishment at eight
years' confinement, which the judge stacked on Sanchez's prior sentence. See Tex. Code Crim.
Proc. Ann. art. 42.08(b) (Vernon 2006) (requiring cumulation of sentence for new offense
committed in prison while serving a different prison sentence).

 On appeal, Sanchez asserts error in two rulings of the trial court: (1) allowing the State to
improperly impeach a defense witness using character evidence and (2) allowing the State to
improperly question a witness concerning Sanchez's custodial silence. We affirm the trial court's
judgment because Sanchez failed to preserve error on either issue.

 To preserve error for appeal, a defendant must (a) object, (b) state the grounds with sufficient
specificity, and (c) obtain an adverse ruling. Tex. R. App. P. 33.1; Wilson v. State, 71 S.W.3d 346,
349 (Tex. Crim. App. 2002). The objection must be made at the earliest possible opportunity. 
Wilson, 71 S.W.3d at 349. An objection is timely when it is made before the evidence is admitted
or as soon as the objectionable nature of the evidence became apparent. Ethington v. State, 819
S.W.2d 854, 858 (Tex. Crim. App. 1991). Finally, "the law in Texas requires a party to continue to
object each time inadmissible evidence is offered." Id. Two exceptions to the general rule requiring
an objection at each offering allow a party "to either (a) obtain a running objection, or (b) request
a hearing outside the presence of the jury." Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App.
2003).

(1) Sanchez Did Not Preserve Any Error Regarding Impeaching a Witness' Character

 One of Sanchez's complaints on appeal is that the State improperly inquired into a defense
witness' character outside the bounds of Rule 404(a) of the Texas Rules of Evidence by asking about
the witness' prison disciplinary record. (3) See Tex. R. Evid. 404.

 As his first witness, Sanchez called an inmate named Christopher Woolverton, who was
housed in the cell next to Sanchez's on the day of the shakedown. Woolverton's direct examination
ended with the assertion that he had told Sanchez the officer's report was a lie. The State began its
cross-examination as follows:

 Q: Mr. Woolverton, you've got a little bit of a problem with authority,
don't you?

 

 A: No sir, I don't.

 Q: You don't. But you've been convicted of aggravated assault on a
peace officer. Isn't that correct?

 

 A: My car hit his.

 

 Q: Okay. And you've been - - you've lost good time credit on five
occasions last year and one occasion this year for threatening an officer. Isn't that
correct?

 

 A: Set up.

 

 Q: Oh, those were all set-ups?

 

 A: Yes, sir.

 

 Q: Okay. And you've also threatened other inmates too, haven't you?

 

 A: No, sir.

 

 Q: And you had contraband in your cell?

 

 [Sanchez's Counsel]: Your Honor, I'm going to object. That's just
improper impeachment of a - - improper character evidence impeachment.

 

 [State's Counsel]: Your Honor, he has a problem with authority. He's
accusing effectively an officer of lying, so I think we're entitled to go into his
problems with officers and his problems with the system in general.

 

 THE COURT: Well, his character is in issue in the sense that he's
putting his character on the line, I mean, his credibility, so I'm going to allow a little
latitude to explore those but let's keep it limited.

 

 [Sanchez's Counsel]: Then, Your Honor, am I to understand my 404a
and 405a objection is overruled?

 

 THE COURT: It'll be overruled.

 

Woolverton never answered the question concerning contraband in his cell, and the State never
attempted to further question Woolverton on this subject. The State did, however, repeat the earlier
line of questioning, without further objection, of whether Woolverton had "lost good time on many
occasions for threatening officers and threatening other inmates," which Woolverton again denied. 
 Sanchez complains on appeal that the State's questions improperly impeached the witness'
character. (4) But, in questions leading up to his trial objection, Sanchez allowed the State to question
Woolverton, without objection, about (1) whether he had a problem with authority, (2) whether he
had been convicted of aggravated assault on a peace officer, (3) whether he had lost good time credit
numerous times for threatening an officer, and (4) whether he had threatened inmates. Sanchez
objected only after the State's final question in that series, the question regarding Woolverton's
possession of contraband. And there was never an answer to the question about contraband. (5)

 Sanchez failed to make a timely and specific objection at the earliest possible opportunity,
that is, when the State first started questioning Woolverton about his disciplinary record. (6) See, e.g.,
Ranson v. State, 707 S.W.2d 96, 98-99 (Tex. Crim. App. 1986); Cohran v. State, No. 03-05-00763-CR, 2006 WL 2918560, at *4 (Tex. App.--Austin Oct. 13, 2006, pet. dism'd) (objection late in line
of questioning untimely to preserve error relating to entire line). This line of questioning was quite
clear, and the nature of each question was immediately apparent when it was asked. Sanchez failed
to obtain a running objection, request a hearing outside the presence of the jury, or make a further
objection on the next two occasions the State questioned Woolverton on his prison disciplinary
record.

 This alleged error has not been preserved for our review.

(2) Sanchez Did Not Preserve Any Error Regarding Custodial Silence

 Sanchez also asserts that the State improperly commented on Sanchez's custodial silence in
asking questions concerning whether an inmate can report contraband without getting in trouble for
the contraband. Of course, Sanchez was in custody by virtue of his imprisonment. Sanchez
complains of the State's questioning in the following exchange, which occurred during the State's
questioning of Office of the Inspector General (OIG) Investigator Jeff Butler:

 Q: Is it regular for weapons to be found and no one end up being charged
with an offense?

 A: Yes.

 

 Q: If an inmate reported to a correctional officer out on the run, hey,
there's a weapon in my cell, it's not mine but you need to come get it, or any other
contraband for that matter, and they reported that to the guards themselves before it
was found, would they end up being charged with a crime?

 

 A: No.

 

 Q: Okay. Have you ever known in the course of your work with the OIG
of somebody being charged with a crime when they said, hey, I just found this piece
of stuff and reported it to a guard?

 

 A: Not to my knowledge.

 

 [Sanchez's Counsel]: Your Honor, I'm going to object. I believe this
is a comment on Mr. Alfonso Sanchez's right to custodial silence under the Fifth
Amendment.

 

 [State's Counsel]: Your Honor, I don't believe that's a comment on
that at all.

 

 THE COURT: Overruled.

 

 Q: So if someone found something, if an offender just finds something
out on the unit and they report it, hey, I found this, they're not necessarily charged
with that?

 

 A: No.


 Sanchez complains on appeal that the State's questions commented on Sanchez's custodial
silence, that is, his failure to report the shank before it was discovered by officers. But Sanchez's
objection came only after the State had asked the question of Butler twice and he had answered both
questions. While the objection would have been timely as to the second question and answer, the
first question and answer went without objection.

 As with the questions concerning the character of the defense witness, Sanchez failed to
make a timely and specific objection at the earliest possible opportunity, that is, as to the State's first
question about whether prisoners get in trouble for reporting contraband. See, e.g., Ranson, 707
S.W.2d at 98-99; Cohran, 2006 WL 2918560, at *4. The first question was not at all unclear, and
its nature was apparent immediately when it was asked. Sanchez's failure to object to the first
question and answer waived any error. (7)






 Because Sanchez has failed to preserve any error for appeal, we affirm the judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 27, 2007

Date Decided: September 4, 2007


Do Not Publish
1. The prison had a regular general inspection for contraband.
2. "Shank" is prison slang referring to a homemade knife or stabbing device.
3. Although Sanchez complains in his appellate brief under both Rule 404(a) and Rule 405(a),
the brief discusses only Rule 404(a). See Tex. R. App. P. 38.1(e), (g), (h). A point of error that is
conclusory and cites no authority presents nothing for review. See Garcia v. State, 887 S.W.2d 862,
871 (Tex. Crim. App. 1994). We find the point of error, insofar as it claims error under Rule 405(a),
to be inadequately briefed and decline to address its substance. See Tex. R. App. P. 38.1(h); Garcia,
887 S.W.2d at 871.
4. Sanchez's counsel called his objection a "404a and 405a objection." See Tex. R. Evid.
404(a), 405(a). Rule 404(a)(3) would allow evidence of a witness' character only under Rules 607,
608, and 609 of the Texas Rules of Evidence. See Tex. R. Evid. 404(a)(3). And Rule 608(b) forbids
impeachment of a witness by inquiry into specific instances of the witness' conduct, except for
convictions as set out in Rule 609. See Tex. R. Evid. 608(b).
5. Sanchez does not, in his brief, address any error in the State's unanswered question to
Woolverton regarding contraband. We find the point of error, insofar as it claims error under Rule
404(a) from the question regarding contraband, to be inadequately briefed and decline to address its
substance. See Tex. R. App. P. 38.1(h); Garcia, 887 S.W.2d at 871. 
6. We acknowledge that the State's response to this objection referenced the full line of
questioning. Nonetheless, Sanchez did not himself object to the entire line; his objection, by its
terms, does not explicitly include any of the earlier questions in its intended scope.
7. We also note that Sanchez's objection to the second question was made solely on the basis
of the Fifth Amendment to the United States Constitution. See Heidelberg v. State, 144 S.W.3d 535,
537 (Tex. Crim. App. 2004) (Fifth Amendment applies to post-arrest silence after Miranda warnings
given, while Article I, Section 10 of Texas Constitution protects post-arrest silence but includes
silence before Miranda warnings); see also Miranda v. Arizona, 384 U.S. 436 (1966). Not only is
it doubtful that the questions constituted a comment on Sanchez's failure to report the shank in his
cell before officers discovered it, but it is doubtful that prosecutorial use of that failure was
impermissible under the Fifth Amendment. See Jenkins v. Anderson, 447 U.S. 231 (1980) (no
constitutional obstacle to use of prearrest silence for impeachment purposes; "privilege against
compulsory self-incrimination is simply irrelevant to a citizen's decision to remain silent when he
is under no official compulsion to speak." (Stevens, J., concurring)); United States v. Frazier, 408
F.3d 1102, 1110 (8th Cir. 2005).



nUsed="false" QFormat="true" Name="Subtle Reference"/>
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00082-CR

                                                ______________________________

 

 

                          JONATHAN BERNARD MORGAN,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 4th Judicial District Court

                                                              Rusk County, Texas

                                                         Trial Court
No. CR09-136

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                     MEMORANDUM 
OPINION

 

            Already
a convicted felon, Jonathan Bernard Morgan was driving a rented truck when he
was stopped by Tatum police officer David Nix for speeding.  The subsequent consensual search of the
vehicle turned up a pistol in the glove compartment, Morgan admitted his prior
felony conviction, and he was arrested. 
From his resulting conviction for unlawful possession of a firearm[1]
and twelve-year sentence, Morgan appeals on the bases that the evidence is
legally and factually insufficient to show he possessed the weapon and that the
search was improper because his detention was unduly prolonged.  Because (1) the evidence was legally and
factually sufficient and (2) the detention was not unduly prolonged, we affirm
the judgment of the trial court.

(1)        The Evidence Was
Legally and Factually Sufficient

            In
two of his four points of error, Morgan claims the evidence was legally and
factually insufficient to prove he intentionally or knowingly possessed the
pistol in the trucks glove compartment.

            We
review the legal and factual sufficiency of the evidence supporting a
conviction under well-established standards. 
In conducting a legal sufficiency review, we consider the evidence in
the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  We must give deference to the responsibility
of the trier of fact to fairly resolve conflicts in testimony, to weigh the
evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307,
31819 (1979)).  We are not required to
determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we
must presume that the trier of fact resolved any such conflict in favor of the
prosecution, and we must defer to that resolution.  State
v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

            In
conducting a factual sufficiency review, we consider the evidence in a neutral
light.  Watson v. State, 204 S.W.3d 404, 41415 (Tex. Crim. App.
2006).  The verdict will be set aside
only if (1) it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and manifestly unjust, or (2) it is against the great weight
and preponderance of the evidence.  Id. at 415 (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).

            Both
legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically-correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see also Grotti v. State,
273 S.W.3d 273, 280 (Tex. Crim. App. 2008). 
The State was required to prove that Morgan (1) possessed a firearm (2)
within five years of being convicted of a felony.  In order to prove unlawful possession of a
firearm by a felon, the State must prove the defendant has been previously
convicted of a felony and possessed a firearm after conviction[2]
and before the fifth anniversary of the persons release from confinement
following conviction of the felony or the persons release from supervision
under community supervision, parole, or mandatory supervision, whichever date
is later.  Tex. Penal Code Ann. § 46.04(a)(1).[3]  [T]o support a conviction for possession of
a firearm, the State must show (1) that the accused exercised actual care,
control, or custody of the firearm, (2) that he was conscious of his connection
with it, and (3) that he possessed the firearm knowingly or intentionally.  Nguyen
v. State, 54 S.W.3d 49, 52 (Tex. App.Texarkana 2001, pet. refd).  When the firearm is not found on the accuseds
person or in his or her exclusive possession, additional facts must link the
accused to the contraband.  Id. at 53; Jones v. State, 963 S.W.2d 826, 830 (Tex. App.Texarkana 1998, pet.
refd).  One of the factors that may link
a defendant to the firearm is whether the contraband was conveniently
accessible to the accused.  Nguyen, 54 S.W.3d at 53; Jones, 963 S.W.2d at 830.

            The
State can meet its burden with circumstantial evidence, but it must establish
that the defendants connection with the firearm was more than fortuitous.  Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  Factors that may serve to link the defendant
with the contraband include:  (1) the
contraband was in a car driven by the accused, (2) the contraband was in a
place owned by the accused, (3) the contraband was conveniently accessible to
the accused, (4) the contraband was in plain view, (5) the contraband was found
in an enclosed space, (6) the contraband was found on the same side of the car
as the accused, (7) the conduct of the accused indicated a consciousness of
guilt, (8) the accused had a special relationship to the contraband,
(9) occupants of the automobile gave conflicting statements about relevant
matters, and (10) affirmative statements connect the accused to the
contraband.  Smith v. State, 118 S.W.3d 838, 842 (Tex. App.Texarkana 2003, no
pet.).  The number of links present is
not as important as the degree to which they tend to link the defendant to the
firearm.  Washington v. State, 215 S.W.3d 551, 555 (Tex. App.Texarkana 2007,
no pet.); Taylor v. State, 106 S.W.3d
827, 831 (Tex. App.Dallas 2003, no pet.).

            When
Nix stopped the truck driven by Morgan and Nix made contact with Morgan, Nix
felt that Morgan was more nervous, over-tense, than most drivers would be in
the circumstances.  Explaining his speed,
Morgan told Nix he was in a hurry and was traveling from Carthage to
Dallas.  Nix thought this unusual, because
there was light traffic on the road, and, in Nixs words, thats a long ways
to have to speed and not think that theyre going to get stopped.  The rented status of the truck further
aroused Nixs suspicion; in his experience, persons carrying drugs or illegal
guns may use rental cars in order not to risk having their own vehicles
seized.  

            In
his case-in-chief, Morgan presented testimony from Anthony Washington, a
homebuilder for whom Morgan did subcontract work.  Washington said that he rented the truck for
Morgan on a Thursday or Friday before the arrest and that Morgan had the truck
over the weekend.  Washington did not
look in the glove compartment of the truck when he rented it, and he said the
rental car representative did not look either. 
Washington testified he had never seen Morgan with a weapon; on the job
site where Morgan worked for him, Washington saw a couple of other men in the
truck.  

            Here,
the gun was found in the vehicle driven by Morgan, who was the only person in
the truck.  Although Morgan did not own
the truck, it had been rented for his use. 
There was testimony the glove compartment was within reach of the
driver.  Based on the testimony that nobody
looked in the glove compartment when the truck was rented, Morgans defensive
theory posited that the pistol could have been left there by the previous
renter.  There was also evidence that
tools in the truck belonged to Morgan.  A
rational jury could have found Morgan intentionally or knowingly possessed the
gun.  Thus, the evidence is legally
sufficient.

            Looking
at factual sufficiency, it is true that Washington said he had never seen
Morgan with a weapon and that he had on one occasion seen other workers in the
truck.  Viewing the evidence in a neutral
light, however, we cannot say the jurys verdict was so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust, or against the great weight and preponderance of the evidence.  The evidence is factually sufficient.

(2)        The Detention Was Not
Unduly Prolonged

            Morgan
claims the trial court erred in overruling Morgans objection to admission of
evidence of the pistol, which violated Morgans rights under the United States
and Texas Constitutions.[4]  We examine the trial courts admission of
evidence in the face of Morgans objection.

            As
no claim is asserted that Morgan was not speeding when stopped by Nix, there is
no question that the stop was initially proper. 
As there is also no claim that Morgan did not consent to Nixs search of
the vehicle, the essence of Morgans remaining argument here is that his
detention was unduly prolonged, rendering his consent ineffective.

            After
discovering Morgan was in a rented vehicle, Nix asked if Morgan had anything
illegal in the vehicle; Morgan said, no, and Nix asked if Morgan would mind
if Nix looked in the truck.  Morgan
consented, orally and in writing, to Nixs search of the vehicle.[5]  Nix said about ten minutes had elapsed
between the traffic stop and his request to search the vehicle.  The consent form signed by Morgan bears the
time of 9:55 p.m., and Nix said he stopped Morgan at 9:45 p.m.  During that time, Nix said he was in radio
contact with his dispatcher checking the status of Morgans drivers license
and the registration on the truck.  Nix
said running these checks takes a while, as he has to relay information to
the dispatcher, who then has to enter that information into a computer; the
dispatcher then obtains the results and relays the information to the
officer.   

            After
obtaining Morgans consent to search the truck, Nix put Morgan in the backseat
of Nixs patrol car; Morgan was not handcuffed, and the back window was opened
partially so Nix could hear if Morgan needed to communicate with Nix.  Nix said he put Morgan in the patrol car for
Nixs safety.  In the trucks glove
compartment, Nix quickly found an unloaded .45 semiautomatic pistol and a
loaded magazine clip for the gun.  Nix
returned to his car and asked Morgan if he had ever been convicted of a felony;
Morgan said he had.  Nix then requested
Morgans criminal history from his dispatcher; when he confirmed that Morgan
was a convicted felon, Nix placed Morgan under arrest.  

            Morgan
complains that Nix detained him beyond the amount of time needed to effectuate
the reason for the traffic stop.  Morgan
claims that Nix had no reason to continue his investigation of Morgan other
than Nixs feeling or suspicion.  We
disagree with Morgans view of the record. 
Nix stopped Morgan about 9:45 p.m.; Morgan told Nix he was in a hurry to
get from Carthage to Dallas, and Nix thought this was unusual, that Morgan
would intend to go over the speed limit over such a distance without being
stopped.  Nix felt that Morgan was acting
more tense and nervous than a stopped driver would normally act, and Nix knew
by experience that rental cars could be used by persons transporting
contraband.  While Nix was talking to
Morgan and having the dispatcher check records on the truck and Morgans drivers
license, Nix requested consent to search the truck.  Morgan acquiesced, orally and in
writing.  Nix found the pistol almost
immediately.  At the time Nix found the
gun, the dispatcher was apparently still checking Morgans license and the
vehicles registration.  After the gun
was found, Nix asked the dispatcher to confirm Morgans admission that he was a
convicted felon.  

            An
investigative detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop.  Davis v. State, 947 S.W.2d 240, 243
(citing Florida v. Royer, 460 U.S.
491, 500 (1983)).  During a routine
traffic stop, an officer may detain an individual to check for outstanding
warrants.  Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000).  An officer may also conduct computer checks
on the drivers drivers license and the cars registration.  Kothe
v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004).  It is only after this computer check is
completed, and the officer knows that this driver has a currently valid
license, no outstanding warrants, and the car is not stolen, that the
traffic-stop investigation is fully resolved. 
Id. at 6364.  Officers may request consent to search while
processing the traffic stop.  State v. Williams, 275 S.W.3d 533, 537
(Tex. App.Texarkana 2008, no pet.).  A
drivers consent to search the vehicle, if otherwise voluntary, is effective to
legalize the search if it is given within the scope of a reasonable traffic
stop.  Id.

            Morgan
relies on the following three cases to support his argument that Nix detained
Morgan longer than needed to complete Nixs investigation of the traffic
stop:  United States v. Jones, 234 F.3d 234 (5th Cir. 2000), abrogated by United States v. Brigham, 382 F.3d 500 (5th Cir. 2004), and United States v. Dortch, 199 F.3d 193
(5th Cir. 1999), abrogated by Brigham, 382 F.3d 500; Wolf v. State, 137 S.W.3d 797 (Tex.
App.Waco 2004, no pet.).  We find each
of these inapposite to Morgans situation.[6] 

            Wolf
was stopped for having a defective license plate lamp.  The stopping officer told Wolf he would be
issued a warning, not a ticket, and then the officer requested Wolfs criminal
history from the dispatcher.  After the
officer was notified Wolf had no criminal history, the officer detained Wolf
and his passenger for three minutes until a canine unit arrived.  Wolf,
137 S.W.3d at 800.  The Waco Court of
Appeals found that, because the officer lacked any reasonable suspicion[7]
to detain Wolf after being officially informed that Wolf had no criminal history,
the subsequent detention was unreasonable. 
Id. at 805.

            Jones involved a situation in which,
although the dispatcher had finished checking Jones criminal history and
notified the stopping officer there was no criminal history, the officer
nonetheless continued to detain Jones, including not returning Jones drivers
license to him, for another three minutes before requesting consent to search
the vehicle.  Jones, 234 F.3d at 238.

            In
Dortch, the officer questioned Dortch about his criminal history, without
telling Dortch the officer had already been provided with the completed
history; and the record indicated the officer clearly intended to detain Dortch
until a canine unit arrived.  Dortch, 199 F.3d at 202.

            In
each of the cases argued by Morgan, law enforcement had completed the purpose
of its traffic stop and completed checking the subjects criminal history.  Conversely, in the instant case, Nix had not
yet received from the dispatcher the requested information concerning Morgans
license and the vehicles registration when he asked for, and received, Morgans
consent to search the vehicle.[8]  The above cases cited by Morgan are distinct
from Morgans situation and we find them inapplicable to the instant situation.

            Because
Nix was still engaged in the reasonable investigation concomitant to the
traffic stop, the detention and investigation were not unreasonable.  See
Caraway v. State, 255 S.W.3d 302, 308
(Tex. App.Eastland 2008, no pet.) (while officer awaits computer warrant
check, questioning about matters unrelated to initial traffic stop does not
violate Fourth Amendment); Edmond v.
State, 116 S.W.3d 110, 11314 (Tex. App.Houston [14th Dist.] 2002, pet.
refd) (continued detention for no longer than required to ask whether
defendant was transporting drugs and whether he would consent to search, not
unreasonable extension of investigatory detention).  Because Nixs questioning of Morgan and the
length of time to do so were not unreasonable, there was no violation of Morgans
rights under the United States or Texas Constitutions.

            We affirm the judgment and sentence
of the trial court.

 

 

                                                                        Josh
R. Morriss, III

                                                                        Chief
Justice

 

Date Submitted:          August 16, 2010

Date Decided:             September 8, 2010

 

Do Not Publish

 

 











[1]See Tex.
Penal Code Ann. § 46.04 (Vernon Supp. 2009).





[2]Morgan
never contested his status as a convicted felon.  Without objection, the State introduced a
stipulation of evidence and judgment establishing Morgans September 7, 2005,
conviction from Dallas County for unlawful delivery of a controlled
substance.  See Tex. Health & Safety
Code Ann. § 481.112 (Vernon 2010). 





[3]The
States indictment alleged Morgan possessed a firearm before the 5th
anniversary of the date of the defendants conviction and/or his release from
community supervision or parole.  The
offense occurred within five years of Morgans prior felony conviction,
September 7, 2005, for which he was sentenced to 300 days incarceration.  Therefore, it is clear that the offense
occurred within the relevant statutory time period, and Morgan does not assert
otherwise or raise this as an issue.  





[4]See U.S.
Const. amend. IV; Tex. Const.
art. I, § 9; Francis v. State, 922
S.W.2d 176, 178 (Tex. Crim. App. 1996).





[5]At
this point in Nixs testimony, Morgan objected that anything Nix testified
about, from this point on, would be the result of an illegal detention.  His objection was overruled, but he was
granted a running objection to this line of testimony.  Morgan did not file a motion to suppress
evidence, and his trial objection did not assert violations of the United
States and Texas Constitutions, which are the subject of his third and fourth
points of error.  However, when he made
his trial objection, he notified the trial court of a memorandum in support of
his argument, which is contained in the clerks record.  In that memorandum, Morgan argues the traffic
stop constituted an illegal detention, and he invokes the United States and
Texas Constitutions.  We, therefore, find
he preserved these arguments for our review. 
See generally Tex. R. App. P. 33.1.





[6]In
addition to the federal cases not being controlling authority, we point out the
panel opinion Dortch was abrogated
by the Fifth Circuits en banc opinion in Brigham,
382 F.3d 500.  See United States v. Pack,
No. 08-41063, 2010 U.S. App. Lexis 14562, at **3334 (5th Cir. July 15, 2010)
(not designated for publication).  Brighams disavowal of the reasoning in Dortch appears to be limited to language
in Dortch, as well as language in Jones, which, under the facts of those
cases, could be interpreted as limiting law enforcement questioning to whatever
suspected criminal activity about which the officer is concernedfor example,
the possibility of a stolen carand would therefore find questions about the
drivers or passengers travel itinerary, or summoning a canine where the
suspected crime involved a stolen vehicle, impermissible.  See
Brigham, 382 F.3d at 51012.





[7]The
officer said he found Wolf overly cooperative and his passenger nervous.  Wolf,
137 S.W.3d at 80001.





[8]Nixs
testimony was that, after stopping and initially making contact with Morgan,
after about ten minutes, he requested consent to search the truck.  During that ten minutes, Nix said he was
issuing a speeding citation and was in contact with the dispatcher, requesting
information on Morgans drivers license and the truck.  Nix said it takes a while for this
information to be compiled and relayed to him in his patrol car.  It was during this period that Nix asked to
search the vehicle.  The
consent-to-search form signed by Morgan states it was completed at 9:55 p.m.,
ten minutes after Nix said he pulled over the vehicle.  There is no indication that information was
received from the dispatcher before Morgan consented to the search.